## Commonwealth v. Walters

*J. Michael Eakin, assistant district attorney,* for the Commonwealth.

*Dennis A. Alessi,* for defendant.

HESS, *J.,* September 18, 1990 — John Adams Walters has appeared before the court for sentencing following two pleas of guilty, to the above-captioned charges, entered on October 31, 1989. The guilty pleas arose out of his alleged delivery of substantial quantities of cocaine, the two charges carrying mandatory minimum of seven to 14 years in the aggregate. The question before us is whether or not the Commonwealth is bound by an agreement to withdraw its notice of these mandatory minimum sentences, thereby permitting the court to sentence within guideline ranges wherein the standard range sentence at 644 Criminal 1989 is 15 to 30 months, and at 319 Criminal 1989 is 27 to 39 months.

On August 28, 1990, we held a sentencing hearing on the matter from which we are able to make the following factual findings concerning the existence of a plea bargain. Our hearing was held in camera because the cooperation of Mr. Walters, with law enforcement officers, was extensive and is, in fact, ongoing. We will, therefore, not reiterate here the details of the cooperation of Mr. Walters, but permit the record of our in camera hearing to speak for itself.

Mr. Walters' cooperation with authorities began prior to his plea in Cumberland County. Specifically, in September, he was responsible for the seizure of cocaine in Dauphin County and the arrest of a dealer in Harrisburg. As we have noted, Mr. Walters pled guilty to the Cumberland County charges in October 1989. The less than artful manner in which the plea was handled no doubt accounts for much of the problem faced by the court today. The

record made of the plea indicated an agreement on the part of the Commonwealth to run the four-year and a three-year minimum sentences concurrently for a mandatory minimum sentence of four to eight years.

While we certainly do not wish to minimize the largess of the Commonwealth, we feel it imperative to observe, at this point, that the offer to run sentences concurrently in exchange for a plea of guilty is a rather routine device in this county and not a plea bargain in the true sense of the phrase. We do not mean, by this observation, to suggest that concurrent sentences are a matter of right, but only to observe that consecutive sentences, in a case such as this, would have been, in any event, highly unlikely. It is for this reason that the contents of a sidebar conference, held at the time of the plea, are of particular importance. While we have learned not to do so in future cases, the sidebar conference sub judice was held off the record. It thus had to be reconstructed at our recent sentencing hearing. While there is considerable disagreement between the District Attorney's Office and defense counsel as to the nature of their understanding, both sides agree as to the contents of the sidebar conference.

Whether or not a criminal defendant has abided by the terms of a plea bargain agreement is ultimately a question for the court and not for the prosecutor. *Commonwealth v. Alvarado*, 442 Pa. 516, 276 A.2d 526 (1971). Thus, while the background of plea bargain negotiations is a factor which the court must consider, the representations which ultimately control are those made known to the court at the time of the plea. In this case, both sides agree that the court was informed that the Commonwealth would withdraw its notice of mandatory sentencing and recommend a departure therefrom in

the event that the defendant gave "substantial cooperation."*

We do not dispute the Commonwealth's contention that, at the time of the plea, they had in mind a cooperation which would lead to the apprehension of a certain kind of supplier (described with less than precision by one of the prosecutors at the sentencing hearing as a "big fish"). This demand, however, was not made known to the court and the defense has confessed ignorance concerning any such requirement. It is, however, no small matter that Mr. Walters, according to testimony adduced at our recent hearings, stands ready, willing and able, to testify at grand jury proceedings to satisfy even this expectation. Notwithstanding, the Commonwealth has refused to withdraw its notice of mandatory sentencing or to recommend any departure from its previously agreed-upon four-year minimum sentence.

At our recent sentencing hearing no less than three police officers testified, all favorably, to defendant. Their testimony revealed that prior to and following his plea of guilty before us in October 1989, Mr. Walters' cooperation was substantial. There is no dispute that his cooperation has led, directly and indirectly, to the seizure of more than 300 grams of cocaine, several pounds of marijuana, $16,000 in cash, and the forfeiture of a Mazda RX7 vehicle. In fact, his cooperation in implicating others involved in the drug trade was so extensive that it was underscored to us in a letter dated February 7,

* The Commonwealth, on the record, referred to "reserving the right" to recommend a sentence other than the mandatory sentence, thus presumably reserving to themselves, rather than the court, the decision as to whether the cooperation had been "substantial." As we have already observed, this is a legal non sequitur.

1990, signed by William H. Graff Jr., Deputy Prosecutor of York County.

Sentences in Cumberland County, of course, are not governed by communications from prosecutors outside our venue. The District Attorney of Cumberland County, in this case, insists that there is no binding plea bargain in this case because Mr. Walters' cooperation has resulted in the actual apprehension of persons involved in the sale of drugs in smaller quantities than those in which he himself is charged. The fact remains that, once there is an agreement with a criminal defendant and the defendant performs his part of the bargain, it is not, we believe, the role of the district attorney to modify the qualitative aspects of the defendant's expected performance after the fact. While the prosecutor is, or course, at liberty to argue that defendant has not met the terms of the plea agreement, the decision as to whether or not this is so is, as we have said, ultimately up to the court. Thus, in this case, simply put, the question is whether or not defendant lived up to his agreement to give "substantial" cooperation. It is clear that he has.

It is generally accepted, throughout the United States, that plea bargains must be treated by the courts as quasi-contracts. *Santobello v. New York,* 404 U.S. 257 (1971). Unlike contracts, however, plea bargains "entail much more than a mere offer and acceptance . . . [They] involve a myriad of collateral considerations such as expectations of fundamental fairness by the defendants, efficient administration of justice, and the integrity of the Government's promises." *U.S. v. Smith,* 648 F.Supp. 495, 498 (S.D. Texas 1986). As noted in *U.S. v. McGovern,* 822 F.2d 739, 743 (8th Cir. 1987), a plea bargain "necessarily implicates the integrity of the criminal justice system." The Supreme Court

of Pennsylvania has been clear in holding that there is an "affirmative duty on the part of the prosecutor to honor any and all promises made in exchange for a defendant's plea." *Commonwealth v. Zuber,* 466 Pa. 453, 458, 353 A.2d 441, 445 (1976). The Superior Court has several times reaffirmed the duty to honor promises made in the context of a plea agreement. *Commonwealth v. Jackson,* 376 Pa. Super. 433, 546 A.2d 105 (1988); *Commonwealth v. Williams,* 333 Pa. Super. 77, 481 A.2d 1230 (1984); *Commonwealth v. Potosnak,* 289 Pa. Super. 115, 432 A.2d 1078 (1981).

Satisfied as to the nature of the agreement *communicated to the court at the time of the plea* and the fact that defendant has abided by it, we go on to address two other issues. The first has to do with the suggestion that defendant's remedy is the withdrawal of his guilty plea. This would normally be the solution where there had been some misunderstanding at the time of the plea or a failure on the part of the defendant to subsequently perform his part of the bargain. In this case, defendant has already admitted his guilt. It is therefore reasonable to assume that even he believes he would be convicted if the matters went to trial. In the event of guilty verdicts, the defendant would face a potential minimum sentence of seven years rather than the four years he initially bargained for. In other words, having cooperated, he is now worse off. This result is patently illogical and unfair.

The second issue has to do with the lawfulness of enforcing the plea bargain in light of the mandatory nature of the statutory sentencing requirement. It is true that section 7508 of our Crimes Code requires the imposition of set minimum penalties where certain quantities of controlled substances are involved. 18 Pa.C.S. §7508. With respect to these

sentences, however, the Crimes Code also provides that the Commonwealth must give "reasonable notice" of its intention to seek imposition of the mandatory minimum sentences. 18 Pa.C.S. §7508(b).

In this county, and no doubt in many other venues, it is common practice for the Commonwealth, to the mutual advantage of parties in criminal cases, to agree to "withdraw" the notice of mandatory sentencing. In the matter sub judice we simply hold the Commonwealth to its prior agreement to do precisely that. We do not dispose of any broader question, including whether such notice can be withdrawn or whether the failure of the Commonwealth to proceed, pursuant to mandatory sentencing, is somehow unlawful. As an aside, we note that such a conclusion would obviously have a remarkable effect on plea bargaining in this county. Were an appellate court to prohibit such plea bargaining throughout the Commonwealth, the effect on the district attorney's ability to administer criminal cases, not to mention the already burgeoning prison population, would be startling. Most importantly, the Commonwealth would be deprived of one of its most useful weapons in the war on drugs — the criminal turned confidential informer.

## ORDER

And now, September 18, 1990, the district attorney is directed to list the within matter for sentence.